Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED DIETZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>GILAT SATELLITE NETWORKS LTD., DOV BAHARAV, ELYEZER SHKEDY, DAFNA COHEN, MEIR SHAMIR, DAFNA SHARIR, AMIR OFEK, ISHAY DAVIDI, AYLON RAFAELI, and AMIRAM BOEHM,<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Fred Dietz ("Plaintiff"), by his undersigned attorneys, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought by Plaintiff against Gilat Satellite Networks Ltd. ("Gilat" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Gilat will be acquired by Comtech Telecommunications Corp. ("Comtech") through its wholly owned subsidiary Convoy Ltd. ("Merger Sub") (the "Proposed Transaction").

2.     On January 29, 2020, Gilat and Comtech issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 29, 2020 (the "Merger Agreement").   Pursuant to the terms of the Merger Agreement, Gilat stockholders will be entitled to receive a combination of (a) $7.18 in cash, plus (b) 0.08425 of a share of Comtech common stock for each Gilat share they own (the "Merger Consideration").  The Proposed Transaction has an enterprise value of approximately $532.5 million.

3.     On March 2, 2020, Comtech filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Gilat stockholders vote in favor of the Proposed Transaction, omits

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Jefferies LLC ("Jefferies"); (ii) the background of the Proposed Transaction; and (iii) Gilat's additional financial advisor's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Gilat's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   Gilat's U.S. subsidiary, Wavestream Corporation, is based in San Dimas, California.   Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## **PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Gilat.

9.     Defendant Gilat is incorporated in Israel with its principal executive offices located at Gilat House, 21 Yegia Kapayim Street, Kiryat Arye, Petah Tikva, 4913020 Israel.   The Company is a global provider of satellite-based broadband communications that designs and manufactures ground-based satellite communications equipment and provides comprehensive solutions and end-to-end services.   Gilat's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "GILT."

10.     Defendant Dov Baharav ("Baharav") has been Chairman of the Board

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

since May 2014 and previously served as the Company's interim Chief Executive Officer ("CEO") from May 2015 through March 2016.

11.     Defendant Elyezer Shkedy ("Shkedy") has been a director of the Company since June 2016.

12.     Defendant Dafna Cohen ("Cohen") has been a director of the Company since December 2014.

13.     Defendant Meir Shamir ("Shamir") has been a director of the Company since May 2016.

14.     Defendant Dafna Sharir ("Sharir") has been a director of the Company since May 2016.

15.     Defendant Amir Ofek ("Ofek") has been a director of the Company since December 2014.

16.     Defendant Ishay Davidi ("Davidi") has been a director of the Company since December 2012.

17.     Defendant Aylon Rafaeli ("Rafaeli") has been a director of the Company since May 2016.

18.     Defendant Amiram Boehm ("Boehm") has been a director of the Company since December 2012.

19.     Defendants identified in paragraphs 10-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

20.     Comtech is a Delaware corporation with its principal executive offices located at 68 South Service Road, Suite 230, Melville, NY 11747.  Comtech is a leading provider of advanced communications solutions for both commercial and government customers worldwide.  Comtech's solutions fulfill its customers' needs for secure wireless communications in some of the most demanding environments, including those where traditional communications are unavailable or cost-prohibitive, and in mission-critical scenarios where performance is crucial.  Comtech's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CMTL."

21.     Merger Sub is organized under the laws of Israel and is a wholly-owned subsidiary of Comtech.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Gilat is a global provider of satellite-based broadband communications. The Company's portfolio consists of a cloud-based satellite network platform, Very Small Aperture Terminals, amplifiers, high-speed modems, and high performance on-the-move antennas, among others.   The Company's products and solutions address key applications such as broadband access, cellular backhaul, enterprise, in-flight connectivity, maritime, trains, defense and public safety.  Gilat has sold over

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1.5 million satellite terminals spanning approximately 90 countries with over 500 active networks.

23.    Gilat has 20 sales and support offices worldwide, four Network Operation Centers, and five research and development centers.  Gilat's products are sold to communication service providers and operators that use satellite communications to serve enterprise, government and residential users, to mobile network operators and to system integrators that use the Company's technology. Gilat's solutions and services are also sold to defense and homeland security organizations and directly to end-users in various market segments, including in certain countries in Latin America.

24.    In 2018, Gilat generated approximately 15% of its revenue from the agreement with Gilat's U.S. based subsidiary, Wavestream and its U.S. system integrator customer.  Wavestream is a provider of Solid State Amplifiers and Block Upconverters.

25.    On November 19, 2019, the Company announced its financial results for the third quarter of 2019.  For the quarter, revenue increased to $63.4 million, compared to $59.7 million in the second quarter of 2019 and $62.8 million in the third quarter of 2018.  The Company's GAAP operating income increased 17.1% to $7.0 million, compared to $6.0 million in the third quarter of 2018, and increased 43.1% from $4.9 million in the second quarter of 2019.  The Company's CEO, Yona

Ovadia ("Ovadia"), commented on the quarter's financial results:

> We achieved significant milestones in the Third Quarter, both on the financial and the business sides, as we continued to execute our strategy to build high quality, profitable revenues through our growth engines of Broadband, Mobile Cellular Backhaul and Mobility IFC.
>
> On the financial side we attained substantial progress as we continued to improve profitability. We have attained a record achievement of double-digit millions of dollars of Adjusted EBITDA, $10.1 million to be exact. This has been achieved only once before since we made growth in profitability one of the pillars of our strategy, and we have every intention to repeat it going forward.
>
> On the business side, I am excited to report that Gilat reached a landmark achievement with the selection of Gilat's platform by SES for the O3b mPOWER Medium Earth Orbit (MEO) Communications System. Gilat was selected due to our innovative ground segment, that significantly reduces cost per bit, best-in-class spectral efficiency, and a step function in modem performance. This win positions Gilat at the forefront of ground networks for Non-Geo Stationary Orbit (NGSO) constellations and as well as a prominent player for the new generation of HTS and VHTS GEO satellites.

26.     On February 19, 2020, Gilat announced its fourth quarter and full year 2019 financial results, including revenues of $78.3 million for the quarter, compared to $69.7 million for the fourth quarter of 2018, and GAAP operating income of $9.2 million, compared to $7.5 million in the fourth quarter of 2018.

27.     On January 29, 2020, Gilat and Comtech issued a joint press release announcing the Proposed Transaction, which states in relevant part:

> MELVILLE, N.Y., and PETAH TIKVA, ISRAEL; January 29, 2020 7:00 A.M. ET — Comtech Telecommunications Corp. (Nasdaq: CMTL) ("Comtech") and Gilat Satellite Networks Ltd. (Nasdaq: GILT; TASE: GILT) ("Gilat") jointly announced today that Comtech has

agreed to acquire Gilat in a cash and stock transaction for $10.25 per Gilat ordinary share of which 70% will be paid in cash and 30% in Comtech common stock, resulting in an enterprise value of approximately $532.5 million. Founded in 1987 with its headquarters in Israel, Gilat is a worldwide leader in satellite networking technology, solutions and services with market leading positions in the satellite ground station and in-flight connectivity solutions markets and deep expertise in operating large network infrastructures.

Based on Comtech's fiscal year 2019 actual results and Gilat's trailing twelve-month results through June 30, 2019, on a pro-forma basis, Comtech would have reported approximately $926.1 million of revenue with Adjusted EBITDA of approximately $130.2 million (see definition and reconciliation to GAAP financial measures in the table below). The combined companies would employ approximately 3,000 people and offer best-in-class satellite technology, public safety and location technology and secure wireless solutions to commercial and government customers around the world.

Fred Kornberg, Chairman of the Board and CEO of Comtech, said, "I am excited to have reached this agreement with Gilat and believe this combination is beneficial to the stakeholders of both companies. The acquisition better positions Comtech to take advantage of key marketplace trends, particularly the growing demand for satellite connectivity and the enormous long-term opportunity set that is emerging in the secure wireless communications market. I believe that the combination of accelerating satellite connectivity demand and the increasing availability of low-cost satellite bandwidth, makes this a perfect time to unify Comtech and Gilat's solutions and offer our combined customers best-in-class platform-agnostic satellite ground station technologies. Gilat is an exceptional business that has developed extraordinary technology and has a well-respected product portfolio supported by strong research and development capabilities. I welcome Gilat's entire talented workforce to the Comtech family."

Dov Baharav, Chairman of the Board of Gilat, said, "The Gilat Board of Directors and management believe this highly strategic combination is compelling. It is an excellent outcome for our shareholders who receive both cash and an equity interest in a strong company with a broader range of products and the benefits of combined expertise and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

resources that is well positioned to create future value against a highly favorable industry backdrop. I have long admired Comtech's commitment to technology leadership and I firmly believe that employees will have expanded opportunities for career development. No doubt, the future will be very bright for Comtech and Gilat and all of our stakeholders."

**Key Strategic Benefits for Comtech Include:**

Drives global market access by creating a world leader with combined pro-forma sales approaching nearly $1.0 billion annually;

Strengthens Comtech's position as a leading supplier of advanced communication solutions, uniquely capable of servicing the expanding need for ground infrastructure to support both existing and emerging satellite networks;

Expands Comtech's product portfolio with highly complementary technologies, including Gilat's high-performance TDMA-based satellite modems and its next generation solid-state amplifiers;

Broadens leadership position in the rapidly growing in-flight connectivity and cellular backhaul markets which are expected to expand given the availability of lower-cost bandwidth and the adoption of satellite technologies into the 5G cellular backhaul ecosystem;

Bolsters world-class research and development capabilities, enabling Comtech to offer customers more complete end-to-end technology solutions;

Enhances ability to accelerate shareholder value creation by contributing to Comtech's ongoing strategy to move toward higher margin solutions and by increasing customer diversification geographically and by market; and

Potentially offers increased liquidity for existing and new Comtech shareholders, as Comtech plans to pursue a dual listing on the Nasdaq and Tel Aviv Stock Exchange ("TASE") to become effective upon the closing of the transaction.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

* * *

**Leadership and Business Structure**

Fred Kornberg, Comtech's Chairman of the Board and Chief Executive Officer ("CEO") will continue in his role as CEO of the combined company.  Michael Porcelain, Comtech's Chief Operating Officer, who was promoted and named President of Comtech earlier today, will work hand-in-hand with both Comtech and Gilat employees to maximize the potential of the combined company. Michael Bondi will continue in his role as Chief Financial Officer ("CFO") of the combined company. Comtech will continue to maintain its headquarters in Melville, New York.

Post-closing of the transaction, Gilat will become a wholly owned subsidiary of Comtech and will maintain its well renowned and highly regarded brand. Gilat will continue to maintain its corporate headquarters and research and development facility in Petah Tikva, Israel under the leadership of Yona Ovadia, Gilat's CEO and Adi Sfadia, Gilat's CFO. Mr. Sfadia will also be assuming the role of Gilat's Chief Integration Officer, helping to plan a smooth acquisition and to maximize shareholder value.

No Comtech or Gilat facility locations are expected to be closed as a result of the transaction and each key business area is expected to continue to be led by its respective existing proven leadership teams after the transaction closes.

**Transaction Structure and Terms**

Under the terms of the agreement, unanimously approved by both companies' Board of Directors, Gilat shareholders will receive total consideration of $10.25 per share, comprised of $7.18 per share in cash and 0.08425 of a share of Comtech common stock for each share of Gilat held.

The total consideration of $10.25 represents a premium of approximately 14.52% to Gilat's 90-day volume-weighted average trading price.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Upon completion of the transaction, Gilat's shareholders will own approximately 16.1% of the combined company.

**Insiders' Interests in the Proposed Transaction**

28.    Gilat's insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Gilat.

29.    Gilat insiders stand to reap substantial financial benefits for securing the deal with Comtech.  In connection with the Proposed Transaction, the Board is paying a transaction bonus of $1,000,000 to the Company's CEO Ovadia, and a transaction bonus of $500,000 to the Company's Chief Financial Officer ("CFO"), Adi Sfadia ("Sfadia").

30.    Moreover, according to the January 29, 2020 joint press release announcing the Proposed Transaction, Ovadia and Sfadia will continue in their roles upon consummation of the merger.

**The Registration Statement Contains Material Misstatements or Omissions**

31.    The defendants caused to be filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Gilat's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed

decision whether to vote in favor of the Proposed Transaction.

32.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Jefferies; (ii) the background of the Proposed Transaction; and (iii) Gilat's financial advisor's potential conflicts of interest.

**_Material Omissions Concerning the Company's Financial Projections and Jefferies' Financial Analyses_**

33.     The Registration Statement omits material information regarding Company management's financial projections.

34.     For example, the Registration Statement fails to disclose the Company's net operating loss carryforwards over the projection period, for each of the "Base Case" and "Upside Case" sets of projections.

35.     The Registration Statement also fails to disclose all line items underlying adjusted EBITDA and unlevered free cash flow, including tax-affected adjusted EBITDA, stock-based compensation, changes in net working capital, and capital expenditures.

36.     Additionally, the Registration Statement omits material information regarding Jefferies' financial analyses.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

37.     The Registration Statement describes Jefferies' fairness opinion and the various valuation analyses it performed in support of its opinion.   However, the description of Jefferies' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Gilat's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Jefferies' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38.     With respect to Jefferies' *Selected Public Companies Analysis* for Gilat and Comtech and *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by Jefferies, respectively.

39.     With respect to Jefferies' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the value of the Company's net operating loss carryforwards over the projection period; (ii) the terminal values for the Company for each of the Base Case and Upside Case; (iii) quantification of Gilat's terminal year unlevered after-tax free cash flows; (iv) the implied terminal multiples resulting from the analysis; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%.

40.     Without such undisclosed information, Gilat stockholders cannot evaluate for themselves whether the financial analyses performed by Jefferies were

based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Jefferies' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41.     The omission of this material information renders the statements in the "Certain Unaudited Projections of Gilat" and "Opinion of Jefferies LLC" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning the Background of the Proposed Transaction**

42.     The Registration Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

43.     For example, the Registration Statement sets forth that Gilat entered into a confidentiality agreement with a party referred to as "Party B." The Registration Statement, however, fails to disclose whether the confidentiality agreement includes a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding Party B from submitting a topping bid for the Company.

44.     The failure to disclose the existence of DADW provisions creates the false impression that any potential bidder who entered into a confidentiality

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

agreement could make a superior proposal for the Company. If Party B's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

45. Any reasonable Gilat stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

46. The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Gilat's Additional Financial Adviser's Potential Conflicts of Interest***

47. The Registration Statement fails to disclose material information concerning the terms of engagements of the Company's additional financial advisor, Quilty Analytics ("Quilty").

48. According to the Registration Statement, Gilat engaged Quilty "to perform industry, operational and business due diligence on Comtech on Gilat's behalf." Registration Statement at 45. The Registration Statement fails, however, to disclose the terms of Quilty's engagement including the compensation it received

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

or will receive in connection with performing industry, operational and business due diligence on Comtech on Gilat's behalf, whether Quilty has performed past services for Gilat, Comtech or their respective affiliates, and any compensation received in connection with such services.

49.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50.     The omission of this material information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Gilat will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

### **Count I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Jefferies, the background of the Proposed Transaction, and Gilat's additional financial advisor's potential conflicts of interest.  The defendants were at least negligent in causing the filing of the Registration Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in making a voting decision on the Proposed Transaction.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

56.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>COUNT II</u>

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

58.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Gilat within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Gilat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading

19
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

62.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Gilat's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Gilat, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Dated: March 25, 2020          **WEISSLAW LLP**

By: _____

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS